

FILED
IN OPEN COURT

NOV 1 8 2014

CLERK, U.S. DISTRICT COURT
NEWPORT NEWS, VA

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

NEWPORT NEWS DIVISION



| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 4:12CR39 |
| | |
| v. | 18 U.S.C. § 1962(d) |
| | Racketeering Conspiracy |
| HECTOR ROJAS-LAVERDE | (Count 1) |
| a/k/a "El Gordo," a/k/a "Manuel," a/k/a Pablo Juan | |
| Baez Vasquez, a/k/a Anecleto Zerquera | 18 U.S.C. § 1951(a) |
| (Counts 1-3) | Conspiracy to Obstruct, Delay, |
| | and Affect Commerce by Robbery |
| FERMIN OCAMPO-GARCIA | (Count 2) |
| a/k/a "El Arquitecto" | |
| (Counts 1-3) | 18 U.S.C. § 1956(h) |
| | Conspiracy to Launder Monetary |
| FRANZ K. SZAWRONSKI | Instruments |
| a/k/a "Kirke F. Szawronski" and "Francisco" | (Count 3) |
| (Counts 3-6) | |
| | 18 U.S.C. §§ 1956(a) and 2 |
| SLOVICK HAYIMOV | Laundering of Monetary Instruments |
| a/k/a "Steve" | (Counts 4-5) |
| (Counts 3, 7-16) | |
| | 18 U.S.C. §§ 1957 and 2 |
| | Engaging in Monetary Transactions |
| | in Property Derived from Specified |
| | Unlawful Activity |
| | (Count 6) |
| | |
| | 18 U.S.C. §§ 2315 and 2 |
| | Sale or Receipt of Stolen Goods |
| | (Counts 7-16) |

THIRD SUPERSEDING INDICTMENT

NOVEMBER 2014 TERM – at Newport News, Virginia

<u>COUNT ONE</u>

THE GRAND JURY CHARGES THAT:

<u>The Enterprise</u>

1.      At all times relevant to this Indictment, defendant HECTOR ROJAS-LAVERDE,

a/k/a "El Gordo," a/k/a "Manuel," a/k/a Pablo Juan Baez Vasquez, a/k/a Anecleto Zerquera, and

defendant FERMIN OCAMPO-GARCIA, a/k/a "El Arquitecto," along with Alexander Cuadros-

Garcia, a/k/a "Alex," "Brujo," "Aleto," and Manuel Gonzalez; Leonardo Ortiz, a/k/a Luis Angel

Arana-Garcia; Lucesita Argueta, a/k/a "Lucy"; Raul Antonio Escobar-Martinez, a/k/a "Tony";

Luis Carlos Muchado; William Leandro Herrera Bohorquez, a/k/a "Freddy Maldonado-Cepeda";

Jose Alfredo Rivero-Garcia, a/k/a "Alfredo" and "Jose Ribero"; and Juanita Diaz, and others

known and unknown, were members and associates of a criminal organization, which was

engaged in, among other things, acts of violence, robbery of jewel couriers, money laundering,

interstate travel in aid of racketeering, and transport and sale of stolen goods, and which operated

principally from Richmond, Virginia.

2.      This criminal organization, including its leadership, membership, and associates,

constituted an "enterprise," as defined by Title 18, United States Code, Section 1961(4), that is, a

group of individuals associated in fact.  The enterprise constituted an ongoing organization

whose members functioned as a continuing unit for a common purpose of achieving the

objectives of the enterprise.  This enterprise was engaged in, and its activities affected, interstate

and foreign commerce.

## Purposes of the Enterprise

3.      The purposes of the enterprise included promoting and enhancing the enterprise, and enriching its members and associates through, among other things, acts of violence, robbery of jewel couriers, money laundering, interstate travel in aid of racketeering, and transport and sale of stolen goods.

## Manner and Means of the Enterprise

4.      Among the manner and means by which the members and their associates conducted and participated in the conduct of the affairs of the enterprise were the following:

a.      Members of the enterprise and their associates robbed jewels, jewelry, cash, and other goods from traveling jewel couriers, including but not limited to the following robberies:

(1)     On or about December 16, 2009, robbery of a jewel courier in Seven Corners, Virginia.

(2)     On or about February 22, 2010, robbery of a jewel courier in Charlotte, North Carolina.

(3)     On or about March 12, 2010, robbery of a jewel courier in Newark, New Jersey.

(4)     On or about March 25, 2010, robbery of a jewel courier in Henrico County, Virginia.

(5)     On or about April 8, 2010, robbery of a jewel courier in Raleigh, North Carolina.

(6)     On or about April 28, 2010, robbery of a jewel courier in Henrico, Virginia.

(7)     On or about August 26, 2010, robbery of a jewel courier in Vienna, Virginia.

(8)     On or about October 26, 2010, robbery of a jewel courier in Raleigh, North Carolina.

(9)     On or about November 2, 2010, robbery of a jewel courier in Rutherford, New Jersey.

(10)    On or about November 18, 2010, robbery of a jewel courier in Dumfries, Virginia.

(11)    On or about November 30, 2010, robbery of a jewel courier in Richmond, Virginia.

(12)    On or about February 1, 2011, robbery of a jewel courier in Virginia Beach, Virginia.

(13)    On or about October 26, 2011, robbery of a jewel courier in Queens, New York.

(14)    On or about November 3, 2011, robbery of a jewel courier in McLean, Virginia.

     b.     Members of the enterprise and their associates conducted surveillance on jewelry stores and jewel couriers in order to identify prospective robbery victims, using teams of individuals to watch the stores from their vehicles and on foot, including but not limited to the following surveillance operations:

(1)     On or about November 5, 2010, surveillance of jewel couriers in New Bern, North Carolina.

(2)     On or about August 16, 2011, surveillance of a jewelry store in Virginia Beach, Virginia, and a jewel courier as he traveled from Virginia Beach to Richmond, Virginia, to Annapolis, Maryland.

(3)     On or about February 14-15, 2012, surveillance of a jewelry store in San Francisco, California.

c.     Members of the enterprise and their associates identified jewel couriers and organized plans to follow and rob jewels, jewelry, cash, and other goods from the jewel couriers. Members of the enterprise often used mobile phones to communicate with one another, particularly phones with the "push-to-talk" feature.

d.     Members of the enterprise and their associates used masks and gloves to conceal their identity and limit the trace evidence left behind during the robberies.

e.     Members of the enterprise and their associates blocked in the vehicles of jewel couriers and then disabled the vehicles by, among other means, slashing the vehicles' tires and punching out the vehicles' windows.

f.     Members of the enterprise and their associates used violence, threats of violence, and weapons, including knives, blades, and center punches, to rob the jewel couriers.

g.     Members of the enterprise and their associates often stole the jewel couriers' phones and keys to jewel couriers' vehicles, and quickly fled the scene of the robberies.

h.     Members of the enterprise and their associates traveled and transported the stolen jewels, jewelry, cash, and other goods across state lines and made phone calls in interstate commerce to further the goals of the enterprise.

      i.      Members of the enterprise and their associates sold the stolen goods to individuals who buy and sell stolen goods ("fences") in New York and elsewhere and then split the proceeds of their unlawful activities.

      j.      Members of the enterprise and their associates laundered the proceeds of their unlawful activities by, among other means, using proceeds from their robberies to purchase, lease, finance, transfer, and sell personal and investment properties, telephones, cellular phones, vehicles, rental vehicles, residences, and rental properties in furtherance of their unlawful activities; and paying for travel expenses, such as hotel rooms, meals, and gas, during the course of their surveillance and robbery of jewel couriers and transport of stolen jewels, jewelry, cash and other goods.

      k.      Members of the enterprise and their associates used rental vehicles and personal vehicles obtained with fake names, nominees, and altered or counterfeit identification documents during the course of the robberies and surveillance operations.

      l.      Members of the enterprise and their associates changed vehicles and license plates on their vehicles to avoid detection during the course of the robberies and surveillance operations.

<u>The Racketeering Conspiracy</u>

      5.      From on or about and between November 15, 2009, through March 20, 2012, both dates being approximate and inclusive, within the Eastern District of Virginia and elsewhere, defendant HECTOR ROJAS-LAVERDE, a/k/a "El Gordo," a/k/a "Manuel," a/k/a Pablo Juan Baez Vasquez, a/k/a Anecleto Zerquera, and defendant FERMIN OCAMPO-GARCIA, a/k/a "El Arquitecto," along with Alexander Cuadros-Garcia, a/k/a "Alex," "Brujo," "Aleto," and Manuel Gonzalez; Leonardo Ortiz, a/k/a Luis Angel Arana-Garcia; Lucesita Argueta, a/k/a "Lucy"; Raul

Antonio Escobar-Martinez, a/k/a "Tony"; Luis Carlos Muchado; William Leandro Herrera

Bohorquez, a/k/a "Freddy Maldonado-Cepeda"; Jose Alfredo Rivero-Garcia, a/k/a "Alfredo" and

"Jose Ribero"; and Juanita Diaz, together with each other and other persons known and

unknown, being persons employed by and associated with the enterprise, which engaged in, and

the activities of which affected, interstate and foreign commerce, knowingly, and intentionally

conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and

participate, directly and indirectly, in the conduct of the affairs of that enterprise through a

pattern of racketeering activity consisting of multiple acts indictable under:

      a.    18 U.S.C. § 1951 (interference with commerce by threats or violence);

      b.    18 U.S.C. § 1956 (laundering of monetary instruments);

      c.    18 U.S.C. § 1957 (engaging in monetary transactions in property derived from specified unlawful activity);

      d.    18 U.S.C. § 1952 (interstate or foreign travel or transportation in aid of racketeering enterprises);

      e.    18 U.S.C. § 2314 (transportation of stolen goods or other property);

      f.    18 U.S.C. § 2315 (sale or receipt of stolen goods or other property); and multiple acts involving:

      g.    robbery, chargeable under Md. Code, Criminal Law §§ 3-401, 3-402, 1-201 and 1-202, and the common law of Maryland; N.C. Gen. Stat. §§ 14-87.1, 14-2.4 and 15-170, and the common law of North Carolina; N.J. Stat. §§ 2C:15-1, 2C:5-1, 2C:2-6 and 2C:5-2; N.Y. Penal Code §§ 160.00, 160.05, 110.00, 20.00 and 105.00; Va. Code §§ 18.2-58, 18.2-18, 18.2-22 and 18.2-26, and the common law of Virginia; and Ca. Penal Code §§ 211, 213, 27, 31, 182, 664.

6.      It was a further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

(In violation of Title 18, United States Code, Section 1962(d).)

## COUNT TWO

THE GRAND JURY FURTHER CHARGES THAT:

From on or about and between November 15, 2009, through March 20, 2012, both dates being approximate and inclusive, within the Eastern District of Virginia and elsewhere, defendant HECTOR ROJAS-LAVERDE, a/k/a "El Gordo," a/k/a "Manuel," a/k/a Pablo Juan Baez Vasquez, a/k/a Anecleto Zerquera, and defendant FERMIN OCAMPO-GARCIA, a/k/a "El Arquitecto"; along with Alexander Cuadros-Garcia, a/k/a "Alex," "Brujo," "Aleto," and Manuel Gonzalez; Leonardo Ortiz, a/k/a Luis Angel Arana-Garcia; Lucesita Argueta, a/k/a "Lucy"; Raul Antonio Escobar-Martinez, a/k/a "Tony"; Luis Carlos Muchado; William Leandro Herrera Bohorquez, a/k/a "Freddy Maldonado-Cepeda"; and Jose Alfredo Rivero-Garcia, a/k/a "Alfredo" and "Jose Ribero," did knowingly and willfully conspire and agree, together with each other and other persons known and unknown, to unlawfully obstruct, delay and affect, and attempt to obstruct, delay and affect, commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), and the movement of articles and commodities in such commerce, by robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), in that the defendants did knowingly and willfully conspire and agree to take and obtain jewels, jewelry, cash, and other goods from jewel couriers, against their will by means of actual and threatened force, violence, and fear of injury, immediate and future, to each of their persons and property in their custody and possession, that is, the defendants used, carried, displayed, possessed, brandished, and pointed knives, blades, and center punches at the jewel couriers, and demanded jewels, jewelry, cash and other goods.

(In violation of Title 18, United States Code, Sections 1951(a).)

9

COUNT THREE

(Conspiracy to Commit Money Laundering)

THE GRAND JURY FURTHER CHARGES THAT:

1.      The allegations set forth in paragraph 4 of Count 1 of this Indictment are re-alleged as if fully set forth in this Count.

2.      From on or about and between November 15, 2009, through March 20, 2012, both dates being approximate and inclusive, within the Eastern District of Virginia and elsewhere, defendant HECTOR ROJAS-LAVERDE, a/k/a "El Gordo," a/k/a "Manuel," a/k/a Pablo Juan Baez Vasquez, a/k/a Anecleto Zerquera, defendant FERMIN OCAMPO-GARCIA, a/k/a "El Arquitecto," defendant FRANZ K. SZAWRONSKI, a/k/a "Kirke F. Szawronski" and "Francisco," defendant SLOVICK HAYIMOV, a/k/a "Steve"; along with Alexander Cuadros-Garcia, a/k/a "Alex," "Brujo," "Aleto," and Manuel Gonzalez; Leonardo Ortiz, a/k/a Luis Angel Arana-Garcia; Lucesita Argueta, a/k/a "Lucy"; Raul Antonio Escobar-Martinez, a/k/a "Tony"; Luis Carlos Muchado; William Leandro Herrera Bohorquez, a/k/a "Freddy Maldonado-Cepeda"; Jose Alfredo Rivero-Garcia, a/k/a "Alfredo" and "Jose Ribero"; Juanita Diaz; and Israel Hayimov, a/k/a "Mike,"

        a.      did knowingly and willfully conspire and agree, together with each other and other persons known and unknown, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, conspiracy to obstruct, delay, and affect commerce by robbery, in violation of Title 18, United States Code, Section 1951(a); interstate transportation of

10

stolen goods, in violation of Title 18, United States Code, Section 2314; and sale and receipt of stolen goods, in violation of Title 18, United States Code, Section 2315,

(1)     with the intent to promote the carrying on of such specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(2)     knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.     did knowingly and willfully conspire and agree, together with each other and other persons known and unknown, to knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, conspiracy to obstruct, delay, and affect commerce by robbery, in violation of Title 18, United States Code, Section 1951(a); interstate transportation of stolen goods, in violation of Title 18, United States Code, Section 2314; and sale and receipt of stolen goods, in violation of Title 18, United States Code, Section 2315, in violation of Title 18, United States Code, Section 1957.

11

<u>Manner and Means of the Conspiracy</u>

3.     The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

a.     In order to promote the specified unlawful activity and conceal the nature, location, source, ownership, and control of the proceeds from their robberies of jewel couriers, members of the conspiracy traveled across state lines and exchanged the proceeds with defendant SLOVICK HAYIMOV and Israel Hayimov for cash and bank deposits.

b.     Members of the conspiracy communicated with defendant SLOVICK HAYIMOV by cellular telephone to inform him that they had obtained stolen goods and to negotiate prices.

c.     Defendant SLOVICK HAYIMOV, Israel Hayimov, and other individuals purchased the stolen goods from members of the conspiracy knowing that the goods were stolen.

e.     Defendant SLOVICK HAYIMOV, Israel Hayimov, and other individuals paid for the stolen goods in cash and by depositing funds into bank accounts controlled by members of the conspiracy.

f.     Members of the conspiracy used the proceeds from their robberies to purchase, lease, finance, transfer, and sell personal and investment properties, telephones, cellular phones, vehicles, rental vehicles, residences, and rental properties used in furtherance of their unlawful activity; and to pay for travel expenses, such as hotel rooms, meals, and gas, during the course of their surveillance and robbery of jewel couriers and transport of stolen jewels, jewelry, cash and other goods.

g.      Members of the conspiracy purchased businesses by making cash payments greater than $10,000, which were proceeds from their robberies.

h.      Members of the conspiracy prepared and caused to be prepared fraudulent documents to make it appear that funds used to purchase the businesses came from legitimate sources.

(In violation of Title 18, United States Code, Section 1956(h).)

## COUNTS FOUR AND FIVE

THE GRAND JURY FURTHER CHARGES THAT:

On or about the dates set forth below, within the Eastern District of Virginia, defendant FRANZ K. SZAWRONSKI, a/k/a "Kirke F. Szawronski" and "Francisco," along with Alexander Cuadros-Garcia, a/k/a "Alex," "Brujo," "Aleto," and Manuel Gonzalez; and Juanita Diaz, did knowingly conduct the following financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, conspiracy to obstruct, delay, and affect commerce by robbery, in violation of Title 18, United States Code, Section 1951(a), knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

| Counts | Defendant | Date | Transaction | Amount |
|--------|-----------|------|-------------|--------|
| 4 | FRANZ K. SZAWRONSKI, a/k/a "Kirke F. Szawronski" and "Francisco" | March 9, 2011 | Purchase of El Fogon Restaurant | $16,000 |
| 5 | FRANZ K. SZAWRONSKI, a/k/a "Kirke F. Szawronski" and "Francisco" | June 15, 2011 | Purchase of El Michoacano Restaurant | $31,000 |

(In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

14

## COUNT SIX

THE GRAND JURY FURTHER CHARGES THAT:

On or about June 15, 2011, within the Eastern District of Virginia, defendant FRANZ K. SZAWRONSKI, a/k/a "Kirke F. Szawronski" and "Francisco," along with Alexander Cuadros-Garcia, a/k/a "Alex," "Brujo," "Aleto," and Manuel Gonzalez; and Juanita Diaz, did knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the purchase of El Michoacano restaurant in Richmond, Virginia, for approximately $31,000 in cash, such property having been derived from a specified unlawful activity, that is, conspiracy to obstruct, delay, and affect commerce by robbery, in violation of Title 18, United States Code, Section 1951(a).

(In violation of Title 18, United States Code, Sections 1957 and 2.)

15

COUNTS SEVEN-SIXTEEN

THE GRAND JURY FURTHER CHARGES THAT:

On or about the dates set forth in the table below, in the Eastern District of Virginia and elsewhere, the defendant, SLOVICK HAYIMOV, aided and abetted by others known and unknown to the Grand Jury, did receive, possess, conceal, store, barter, sell, and dispose of certain stolen property, that is, jewelry and precious gemstones, of a value of $5,000 or more which had crossed a State boundary after being stolen, said jewelry and precious gemstones being stolen from the locations set forth in the table below and subsequently brought into the State of New York, knowing the same to have been stolen, in violation of Title 18, United States Code, Section 2315.

| Counts | Date of Theft | Location of Theft |
|--------|---------------|-------------------|
| 7 | December 16, 2009 | Seven Corners, Virginia |
| 8 | March 25, 2010 | Henrico, Virginia |
| 9 | April 28, 2010 | Henrico, Virginia |
| 10 | August 26, 2010 | Vienna, Virginia |
| 11 | November 18, 2010 | Dumfries, Virginia |
| 12 | November 30, 2010 | Richmond, Virginia |
| 13 | February 1, 2011 | Virginia Beach, Virginia |
| 14 | June 4, 2011 | Williamsburg, Virginia |
| 15 | November 3, 2011 | McLean, Virginia |
| 16 | December 21, 2011 | Henrico, Virginia |

(In violation of Title 18, United States Code, Sections 2315 and 2.)

## FORFEITURE

1.      The allegations set forth above in this indictment are incorporated here by reference as if they were set forth in full herein for the purpose of alleging forfeiture.  Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and 1963(a)(1)-(3), and Title 28, United States Code, Section 2461(c), in the event of any defendants' conviction on any count of this indictment.

2.      Upon conviction on Count One, in violation of Title 18, United States Code, Section 1962(d), the convicted defendant(s) shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963(a)(1)-(3):

      a.      any and all interest defendants have acquired or maintained in violation of Title 18, United States Code, Section 1962;

      b.      any and all interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise named and described herein which defendants established, operated, controlled, conducted or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

      c.      any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.

17

3.     The interests of the convicted defendant(s) subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1)-(3), include but are not limited to $4,435,500.

4.     Upon conviction on Count Two, in violation of Title 18, United States Code, Section 1951(a), the convicted defendant(s) shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

5.     Upon conviction on Count Three, in violation of Title 18, United States Code, Section 1956(h), on Count Four or Five, in violation of Title 18, United States Code, Section 1956(a), Count Six, in violation of Title 18, United States Code, Section 1957, or Counts Seven-X, in violation of Title 18, United States Code, Section 2315, the convicted defendant(s) shall forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

6.     Substitute Assets: Pursuant to Title 18 U.S.C. 1963(m), Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853(p), the convicted defendant(s) shall forfeit to the United States any of their other property, real or personal, up to the value of property described above, if, by any act or omission of the defendant(s), the property subject to forfeiture:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred, sold to or deposited with a third party;

c.     has been placed beyond the jurisdiction of the court;

18

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty.

    7.    The property of HECTOR ROJAS-LAVERDE, a/k/a "El Gordo," a/k/a "Manuel," a/k/a Pablo Juan Baez Vasquez, a/k/a Anecleto Zerquera, subject to forfeiture to the United States pursuant to Title 18 U.S.C. 1963(m), Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853(p), includes but is not limited to:

      a.     All funds on deposit or credited to Bank of America, account number ending xx25843, held in the name of Fermin Gardenasell;

      b.     All funds on deposit or credited to Bank of America, account number ending xx40527, held in the name of Faustino A. Posadas;

      c.     All funds on deposit or credited to JP Morgan Chase Bank NA, account number ending xx12620, held in the name of Fermin Gardenasell;

      d.     Real property located at 1008 Morven Street, Lancaster, CA 93535, more particularly described as parcel number 3147-006-017 and "Lot 79 of Tract No. 29499, in the City of Lancaster, County of Los Angeles, State of California, as per map recorded in Book 790 pages 41 to 45, Inclusive of Maps, in the Office of the County Recorder of said County."

      e.     Real property located at 1723 Morisan Avenue, Palmdale, CA 93550, more particularly described as parcel number 3053-043-031 and "Lot 31 of Tract No. 31130, in the City of Palmdale, County of Los Angeles, State of California, as per map recorded in Book 1043 Pages 71 through 74 inclusive of Maps, in the office of the County Recorder of Los Angeles County, California."

19

8.    <u>Money Judgment</u>:  Upon conviction of one or more violations alleged in this

indictment, the United States will seek a forfeiture money judgment against the convicted

defendant(s) in an amount as is proved at trial in this matter representing the total amount of

proceeds obtained as a result of defendants' offenses, for which defendants shall be jointly and

severally liable.

(All pursuant to Title 18, United States Code, Sections 853(p), 981(a)(1)(C), 982(a)(1), and
1963(a)(1)-(3)&(m), and Title 28, United States Code, Section 2461(c).)

REDACTED COPY

UNITED STATES v. CUADROS-GARCIA, et al.
CRIMINAL NO. 4:12CR39

A TRUE BILL:

REDACTED COPY

_____
Foreperson

Dana J. Boente
UNITED STATES ATTORNEY

By:      _____
         Eric M. Hurt
         Assistant U.S. Attorney
         VA State Bar No. 35765
         United States Attorney's Office
         721 Lakefront Commons, Suite 300
         Newport News, Virginia 23606
         Phone: (757) 591-4000

         _____
         Adam Small
         Trial Attorney
         U.S. Department of Justice
         Organized Crime and Gang Section
         1301 New York Avenue, N.W., 4th floor
         Washington, D.C. 20530
         Phone: (202) 616-4782